IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**JAMIL MOHAMMED,**<br><br>**Defendant.** | Case Number: 25-cr-00120 (ABJ) |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its undersigned attorneys, respectively submits this Memorandum in Aid of Sentencing pertaining to defendant Jamil Mohammed ("Mohammed" or the "defendant").

The United States Probation Office ("USPO") calculated the defendant's applicable Total Offense Level as 9 and Criminal History Category of I, resulting in an advisory guidelines range of 4 to 10 months' imprisonment. Presentence Report, ECF No. 14 ("PSR") at ¶ 42. The parties calculated the defendant's applicable Total Offense Level as a 7, which would result in an advisory guidelines range of 0 to 6 months' imprisonment.

After consideration of each of the statutory factors in 18 U.S.C. § 3553(a), the United States recommends that the Court impose a sentence of one year of probation and a one-year term of supervised release.[1] Such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

## I. Background

In March 2020, in connection with the COVID-19 global pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which created the Paycheck

[1] The government understands that the defendant has prepaid restitution in the amount of $20,646.

Protection Program (PPP),[2] which was a program administered by the Small Business Administration (SBA) in response to the pandemic. These funds were specially designed to address the crisis facing American business owners and their employees whose livelihoods were threatened by the COVID-19 global pandemic.

The defendant, who worked as an IT Specialist for Information Security at the U.S. Agency for International Development Office of the Inspector General ("USAID OIG"),[3] thereafter engaged in a scheme to defraud the SBA and an SBA lender ("Lender 1") by submitting false and fraudulent loan applications under the PPP. PSR ¶ 15-16. Ultimately, the defendant was successful in fraudulently obtaining two pandemic loans totaling $20,646. *Id.* at ¶ 27.

Specifically, the defendant was the sole owner of and controlled the entity, Babs Solution LLC ("Babs Solution"), a company he registered with the Virginia State Corporation Commission on November 29, 2020. *Id.* at ¶ 16. In both PPP applications the defendant submitted to Lender #1, he inflated the gross yearly income of Babs Solutions in order to obtain more money through the PPP—the defendant submitted loan applications that falsely stated Babs Solutions had a gross income in 2020 of $49,552 when, in fact, its gross income in 2020 was only $4,560. *Id.* at ¶ 23. Additionally, the defendant also falsely stated that his company, Babs

---

[2] The CARES Act, via the PPP, provided up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses. The PPP was designed to provide funds quickly and easily to qualifying individuals. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business to an SBA-authorized lender. The PPP loan application required the business to acknowledge the program rules and make certain affirmative certifications to be eligible for the PPP loan. Under the program, the SBA allowed PPP lenders to rely on certifications made by the borrower to determine whether to extend a PPP loan to a borrower. The PPP lender provided the loan funds, which were guaranteed by the SBA.

[3] USAID OIG is an independent agency that audits, investigates, and oversees USAID programs and operations; its mission is to "safeguard and strengthen U.S. foreign assistance through timely, relevant, and impactful oversight." https://oig.usaid.gov/mission (last visited Sept. 9, 2025). The defendant first worked for USAID on a contract basis and later as a federal government employee.

Solutions, was established on January 1, 2020, and only entities that were in operation as of February 15, 2020, could qualify for a PPP loan. *Id.* at ¶ 24.

After fraudulently obtaining the loan proceeds, the defendant used at least $10,000 of the funds to invest in cryptocurrency, and did not use the remainder of the funds as specified under the PPP. *Id.* at ¶ 27. On or about August 31, 2021, the defendant submitted a PPP Loan Forgiveness Application for his two loans, in which he falsely affirmed he had complied with all the requirements of the PPP, including that he had used the proceeds for eligible purposes under the program. *Id.* at ¶ 28

On May 12, 2025, the defendant pleaded guilty to an Information charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343, pursuant to a plea agreement with the government. *Id.* at ¶ 4. Sentencing in this case is set for September 24, 2025.

## II. Sentencing Argument

### A. Sentencing Procedure

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are "effectively advisory." *Id.* at 245. Determining an appropriate sentence begins with calculating the Sentencing Guidelines range, which serves as the "starting point and the initial benchmark" for the court to consider. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted).

From this starting point, it is then appropriate to consider the factors set forth in 18 U.S.C. § 3553(a) to arrive at an individualized sentence. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for deterrence, the need to reflect the seriousness of the offense, to promote respect for the law, and protect the public. 18 U.S.C. § 3553(a).

**B. The Advisory Guidelines Range**

Per the written plea agreement between the United States and the defendant, the parties stipulate and jointly recommend that the following Guidelines provisions apply in this case:

1. The base offense level is a 7, *see* USSG § 2B1.1(a)(1); and
2. The loss amount is more than $15,000 but less than $40,000, and consequently, the offense level is increased by 4 levels, *see* USSG § 2B1.1(b)(1)(J).
3. Additionally, the defendant meets the criteria for a Zero-Point Offender, and consequently the offense level is decreased by 2 levels, *see* USSG § 4C1.1.(a)(1)-(10).

The application of the above Guidelines provisions results in an adjusted offense level of 9. Pursuant to the terms of the plea agreement, it is the position of the United States that the defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a). Because the applicable Offense Level is less than 16, an additional reduction under USSG § 3E1.1(b) is not applicable. As such, the parties' Guidelines calculation results in a total offense level of 7. After determining the defendant's criminal history falls within Category I, the defendant's calculated Guidelines range at a total offense level of 7 is 0 to 6 months' imprisonment.

Pursuant to USPO's calculation, which applied a two-point enhancement under USSG §2B1.1(b)(12), the defendant's total offense level would be 9 and his calculated Guidelines range would be 4 to 10 months' imprisonment. PSR at ¶ 42.

**C. 18 U.S.C. § 3553(a) Factors**

After the Court has properly calculated the Guidelines range and ruled upon all departure motions,[4] the Court must then consider the factors identified in 18 U.S.C. § 3553(a) to fashion a reasonable sentence. *Gall v. United States*, 552 U.S. 38 (2007). Here, the 3553(a) factors discussed below support a sentence of probation and a one-year term of supervised release.

**a. Nature and Circumstances of the Offense**

The nature and circumstances of the defendant's offenses are serious: in the early days of the global COVID pandemic, people were told to stay home, businesses had to close their doors, and workers were laid off. The country was effectively shut down. In the face of the chaos and uncertainty, the government moved quickly to establish relief programs like PPP for people and businesses suffering in this country. And to get the money to the people who needed it and to do so quickly, these pandemic loan programs relied on the applicants to tell the truth. In the face of this crisis, the defendant did just the opposite—he saw an opportunity to enrich himself and decided to lie, both on his PPP applications and on the forgiveness paperwork to forgive the loans.

However, relative to other PPP cases, the amount of the defendant's loans and the steps he took to perpetuate and conceal the fraud were less egregious—he sought two loans for one company, and listed one employee each time: himself. Although his conduct was inexcusable,

[4] There are no departure motions currently before the Court.

the nature and circumstances of the offense and other 3553(a) factors weigh in favor of a sentence of probation.

**b. History and Characteristics of the Defendant**

The defendant's history and characteristics are both aggravating and mitigating. Although the defendant has expressed remorse for his actions and was quick to take responsibility, he nevertheless only came clean when his fraud was discovered, and he engaged in his fraudulent conduct while working at USAID OIG—an agency charged with rooting out fraud and waste. Moreover, the defendant has reported a supportive family structure and does not have mental health or substance abuse issues, and he is well-educated—receiving a bachelor's degree and a master's degree. PSR ¶ 53, 66, 68-69. His decision to engage in the offense conduct is therefore all the more baffling and inexplicable in light of his support, opportunities, and advantages. In mitigation, the defendant seems truly remorseful for his actions and has been cooperative in the proceedings against him. He appears intent to evolve from his errors and put them behind him—including by seeking to pre-pay his restitution. *See* ECF No. 13.

**c. Adequate Deterrence to Criminal Conduct**

The Court must also weigh the need for the sentence imposed to afford adequate specific and general deterrence. 18 U.S.C. § 3553(a)(2). Although the government believes that specific deterrence has likely been achieved in this case with respect to the defendant, his prosecution will serve the goal of general deterrence in this instance as well. General deterrence is perhaps even more important in fraud cases such as this one, which are often difficult to detect, investigate, and prosecute. *See e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than

sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'"). Additionally, given the defendant's day job working at USAID OIG, the sentencing aim of general deterrence is particularly important. Those who work for government agencies and in other positions of trust must know that the same rules apply to them as to everyone else, and that anyone who engages in similar conduct will be caught and punished under the law.

**d. The Seriousness of the Conduct, Protection of the Public, and Need to Provide Just Punishment and Promote Respect for the Law**

Finally, the advisory Guidelines range in this case reflects "the seriousness of the offense[s]." 18 U.S.C. § 3553(a)(2)(A); *United States v. Goff,* 501 F.3d 250, 257 (3d Cir. 2007) ("[T]he Guidelines reflect a carefully considered assessment of the seriousness of federal crimes."). There is no question that the defendant's criminal conduct was serious, and that he has already experienced consequences for his actions, including through the loss of his position with the federal government. The government's recommendation is appropriate in this case to protect the public and to provide just punishment.

## III. Loss and Restitution

The parties agree that the financial loss caused by the defendant is $20,646. The defendant sought the ability to pre-pay restitution, ECF No. 13, which was granted by this Court.

**IV. Conclusion**

As such, the government respectfully asks the Court to impose a sentence of probation and one-year of supervised release as a sentence sufficient but not greater than necessary to effect the aims of sentencing.

DATED: September 15, 2025

Respectfully submitted,

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: *<u>/s/ Sara Hallmark</u>*
Sara A. Hallmark
Trial Attorney
Department of Justice Criminal Division
Fraud Section

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on September 15, 2025, I caused a copy of the foregoing sentencing memorandum to be served via ECF.

*<u>/s/ Sara Hallmark</u>*
Sara A. Hallmark
Trial Attorney